**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IRVIN WILFREDO AUDON MARTINEZ,<br>Petitioner,<br>v.<br>JOSHUA JOHNSON, et al.,<br>Respondents. | Case No. 5:26-cv-04814-SP<br><br>**MEMORANDUM OPINION AND ORDER DENYING PETITION** |

**I.**

**INTRODUCTION**

On August 23, 2026, petitioner Irvin Wilfredo Audon Martinez, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet.") supported by exhibits. Docket no. 1. Petitioner is being held at the U.S. Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California. Petitioner contends his detention violates his right to procedural and substantive due process under the Fifth Amendment. Petitioner also asserts the conditions of his detention violate the Administrative Procedure Act ("APA") because they do not comply with the preliminary injunction issued in *L.T. v. I.C.E.*, case number

5:26-cv-00322. Petitioner seeks immediate release from immigration custody, as well as declaratory and other injunctive relief.

On September 1, 2026, respondents filed a Response supported by exhibits. Docket no. 9. Petitioner filed a Reply supported by exhibits on September 3, 2026. Docket no. 10.

For the reasons discussed below, the court denies the Petition.

## II.

## BACKGROUND

Petitioner is a native and citizen of El Salvador who entered the United States on April 22, 2022, and was apprehended at the border. Pet. ¶ 2, Ex. B.[1] Petitioner was released on May 13, 2022 on conditional parole. Response, Ex. 1. Petitioner filed an application for asylum within one year of his entry. Pet. ¶ 32.

On September 2, 2025, petitioner was arrested for battery (domestic violence), aggravated trespassing, and false imprisonment. Pet., Exs. B, F. Following the arrest, petitioner was enrolled in the Intensive Supervision Appearance Program ("ISAP") and an ankle monitor was placed on him. Pet. ¶¶ 3, 34. ICE also filed a detainer. *Id.* ¶ 5.

On January 8, 2026, ICE agents arrested petitioner at an ISAP check-in. *Id.* ¶ 6, Ex. B. The ICE agents served petitioner with an administrative warrant. Response, Ex. 2 at 4. Petitioner asserts he was not given proper notice or a hearing. Pet. ¶ 6.

Petitioner appeared before an immigration judge on March 10, 2026. *Id.* ¶ 7, Ex. G. The immigration judge denied petitioner a bond hearing on the ground that the immigration court lacked jurisdiction under *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *See id.*, Ex. G.

---

[1] The Petition is signed only by petitioner's counsel and is not verified by petitioner. The court presumes the facts alleged in the Petition are accurate: (1) for the purposes of Part II of this opinion and if not disputed by respondents; (2) if supported by documents or other evidence in the record; or (3) if the information could have been within counsel's personal knowledge.

On March 23, 2026, petitioner filed a habeas petition in this court, *Audon-Martinez v. Johnson*, case number 5:26-cv-01339 (the "March 2026 petition"). Case no. 5:26-cv-01339, docket no. 1. In the March 2026 petition, petitioner raised three claims, that his detention violated the Immigration and Nationality Act ("INA"), the APA, and procedural due process because he was not provided a bond redetermination hearing under 8 U.S.C. § 1226(a). *Id.* On April 14, 2026, the parties submitted a joint proposal, requesting that the court grant the March 2026 petition and enter a judgment as follows: "Within seven (7) days of entry of judgment, Respondents will provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)." *Id.*, docket no. 11. The court entered the stipulated order granting the March 2026 petition and entry of judgment as proposed on April 17, 2026. *Id.*, docket no. 13.

On April 22, 2026, petitioner appeared before an immigration judge and withdrew his request for a bond hearing. *See* Response, Ex. 4. On May 8, 2026, petitioner again appeared before an immigration judge, who determined petitioner was a danger and denied bond. Pet. ¶ 9, Ex. H.

On May 22, 2026, an immigration judge granted petitioner voluntary departure and denied his application for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* ¶ 10; *see* https://acis.eoir.justice.gov/en/. Petitioner appealed the decision on June 19, 2026. *See* https://acis.eoir.justice.gov/en/.

On July 14, 2026, petitioner appeared for a bond hearing, presumably pursuant to *Rodriguez v. Holder*, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), *aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018). Pet. ¶ 12, Ex. I. The immigration judge determined petitioner was a flight risk and denied bond. *Id.*, Ex. I. The immigration judge did not reach any determination on danger. *See id.*

//

## III.

## DISCUSSION

Petitioner raises three grounds for relief, that his detention violates: (1) his right to substantive due process under the Fifth Amendment; (2) his right to procedural due process under the Fifth Amendment; and (3) the APA for failure to comply with the *L.T.* preliminary injunction. Pet. at 18-21.[2] Respondents argue the Petition should be denied because petitioner received the procedural due process to which he is entitled and fails to state an APA claim.[3] Response at 6, 9-10.

### A. The Court Has Jurisdiction Over the Petition

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, petitioner argues he should be released because his detention violates the Due Process Clause of the Fifth Amendment. *See* Pet. at 18-20. He has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the

---

[2] Petitioner restarts the enumeration of the paragraphs in his claims for relief section. To avoid confusion, the court refers to the page numbers here.

[3] Respondents also argue the Petition should be denied because petitioner has not exhausted his administrative remedies by appealing the bond denials to the Board of Immigration Appeals and the alleged violations of the Fourth Amendment do not support a claim. Response at 3-5, 6-9. Neither argument addresses claims raised in the Petition. Although petitioner implies the bond hearings were constitutionally inadequate (Pet. ¶ 51), he does not actually raise such a claim. Likewise, the Petition does not contain a Fourth Amendment claim.

decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted). Because petitioner is challenging his detention rather than any of the three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

**B. <u>The Petition Does Not State a Substantive Due Process Claim</u>**

Petitioner argues he has been denied his Fifth Amendment right to substantive due process without a hearing. Pet. at 18-19. Specifically, petitioner asserts the nine-month duration of his detention has been excessive and he has been unable to challenge his mandatory detention under the Laken Riley Act, namely whether his pending criminal charges are qualifying enumerated offenses. *Id*. at 19.

Petitioner's claim is premised on incorrect facts. First, petitioner is not subject to mandatory detention under the Laken Riley Act. In January 2025, the Laken Riley Act added a new subparagraph to § 1226(c), requiring mandatory detention for a noncitizen who: (1) is inadmissible under 8 U.S.C. § 1182(a)(6)(A), 6(C), or (7); and (2) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person." *See* 8 U.S.C. § 1226(c)(1)(E)(i)-(ii). The record plainly

reflects petitioner is detained under § 1226(a), not § 1226(c). Indeed, petitioner was provided a § 1226(a) hearing. *See* Pet., Ex. H. Second, petitioner has received two bond hearings since he was detained. *See id*., Exs. H-I. Thus, while petitioner has been detained for over nine months already, he has been provided the opportunity to challenge the detention.

Because the facts underlying petitioner's claim are incorrect, petitioner fails to state a substantive due process claim.

**C. Petitioner Already Received Relief for Respondents' Procedural Due Process Violation**

Petitioner contends his detention violates his right to procedural due process because respondents revoked his order of supervision ("OSUP") without notice and a hearing before a neutral arbitrator. *Id*. at 19-20. Respondents assert petitioner received the procedural due process to which is entitled. Response at 6.

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

As an initial matter, as with the substantive due process claim, the procedural due process claim rests on facts unsupported by the record. Petitioner maintains he was released on an OSUP in 2022 and he was either entitled to a pre-deprivation hearing (Pet. ¶¶ 40-47 and at 19-20) or adequate notice and informal hearing under 8 C.F.R. §§ 241.4,

241.13 (Reply at 4-6). But the record clearly reflects ICE released him on conditional parole. *See* Response, Ex. 1. Moreover, petitioner could not have been released on an OSUP in 2022 because he was pre-removal when redetained. *See* Pet. ¶¶ 3, 10, 34. Noncitizens are released on an OSUP when their removal "is not significantly likely in the reasonably foreseeable future." 8 C.F.R. § 241.13(h)(1); *see* https://ohss.dhs.gov/glossary0 (defining OSUP as a "[c]ondition under which an alien may be released from [ICE] custody because the field office is unable to obtain a travel document"). Indeed, petitioner's entire discussion about the procedural requirements of an OSUP revocation cite to regulations governing post-removal procedures. *See* Reply at 4-7. Although petitioner was enrolled in ISAP at the time of his re-detention, he was pre-removal and thus not under an OSUP. *See* Pet. ¶¶ 3, 10, 34; https://acis.eoir.justice.gov/en/. Regardless, petitioner was entitled to procedural due protections as a conditional parolee.

**1. Petitioner Has a Protected Liberty Interest**

The first step asks whether respondents have interfered with petitioner's protected liberty interest. Petitioner argues he has a liberty interest in his conditional release from immigration custody. *See* Pet. at 18-19.

Conditional release from custody may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). "Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025) (citing *Young*, 520 U.S. at 147-49); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *see Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F.

Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey*, 408 U.S. at 482); *see Arevalo-Hortua v. Hernandez*, 2026 WL 2797986, at *4 (W.D. Wash. Sept. 18, 2026) (some courts determined that non-citizens whose parole had expired are still entitled to pre-deprivation notice and an opportunity to respond).

In *Morrissey*, the Supreme Court explained that "[t]he liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime." 408 U.S. at 482. "Subject to the conditions of [their] parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.*

This was petitioner's situation. Petitioner arrived in the United States in April 2022 and has been here ever since. Pet. ¶ 2; *see id.* ¶ 36. Petitioner has family in the United States and attended school. Pet. ¶ 36. Petitioner established a life for himself in the United States while released on parole and therefore has acquired a protected liberty interest in his release from immigration custody. *See e.g., Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1163 (C.D. Cal. 2025); *Mody v. Warden*, 2026 WL 51976, at *5-6 (C.D. Cal. Jan. 5, 2026); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("petitioner has a liberty interest in his continued release on bond"); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025); *R.D.T.M.*, 2025 WL 2686866, at *4-5; *Esquivel Pacheco v. LaRose*, 2026 WL 242300, at *6 (S.D. Cal. Jan. 29, 2026); *Osmonaliev v. Cantu*, 2025 WL 3637397, at *1 (D. Ariz. Dec. 16, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321-22 (W.D. Wash. 2025).

**2. <u>Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Re-Detention Under the Due Process Clause</u>**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge* . . . ." *Pinchi*, 792 F. Supp. 3d at 1033 (citation omitted); *see also Hernandez v. Sessions*, 872

F.3d 976, 993 (9th Cir. 2017) (applying the *Mathews* factors in the immigration context). The three factors considered by the court under *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here his interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted); *Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause'"). Petitioner has lived in the United States since 2022, has family here, and attended school. Pet. ¶¶ 2, 36. As such, his personal interest in remaining out of immigration custody is extremely high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) (citation modified). The Supreme Court has made clear that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents made such a determination with respect to petitioner when they released him into the United States, concluding he presented neither a risk of flight nor danger to

the community. *See* Response, Ex. 1; 8 C.F.R. § 212.5(b) (requiring that a non-citizen "present neither a security risk nor a risk of absconding" before being granted parole). Petitioner complied with the requirements of his release until September 2, 2025, when he was arrested for domestic violence, aggravated trespassing, and false imprisonment. *See* Pet. ¶ 34, Ex. F; Response, Ex. 1 ("You must not violate any local, State of Federal laws or ordinances."). After his arrest, ICE filed a detainer, placed an ankle monitor on him, and enrolled him in ISAP. Pet. ¶¶ 3, 5, 34. The fact that respondents only increased his supervision but did not detain petitioner after the arrest suggests they still determined he was neither a flight risk nor danger, and thus the value of procedural safeguards still is high. *See R.D.T.M.*, 2025 WL 2686866, at *6; *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026). Nevertheless, the risk of erroneous deprivation is diminished by his arrest and violation of the conditions of his parole.

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner absent additional process. As other courts have repeatedly recognized, "there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Meneses*, 811 F. Supp. 3d at 1164; *see also R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1036; *Hasratyan v. Bondi*, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Yataco v. Warden, Adelanto Det. Facility*, 2025 WL 4065463, at *6 (C.D. Cal. Dec. 26, 2025). The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by Immigration Courts. *See Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted); *see also Pinchi*, 792 F. Supp. 3d at 1036. Because petitioner was initially found not to be a danger to the community or a flight risk by respondents, the government had minimal interest in detaining him at all, absent some showing of material changed circumstances. *See Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a

danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). Petitioner's arrest did change the circumstances, but whether such change warranted detention is a matter that should have been decided by an immigration judge.

In sum, given petitioner's strong interest in being free from immigration detention, the risk of erroneous deprivation of his liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors favor petitioner. Therefore, the government's detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment. But this determination does not the inquiry given the events that followed.

**3. <u>Since His Re-Detention, Petitioner Received a Bond Hearing Satisfying Due Process</u>**

After being re-detained without a pre-deprivation hearing, petitioner appeared before an immigration judge on April 22, 2026 for a § 1226(a) bond hearing, but he withdrew his request for the hearing. *See* Response, Ex. 4. On May 8, 2026, an immigration judge held a bond hearing and denied bond. Pet., Ex. H. Subsequently, petitioner was provided a *Rodriguez* hearing on July 14, 2026 and an immigration judge again denied bond. Pet. ¶ 12, Ex. I. The question is whether petitioner's post-deprivation hearings satisfy due process.

Many district courts in this Circuit "have ordered release even where a belated bond hearing has taken place," *Kumar v. Rios*, 2026 WL 1764923, at *7 (C.D. Cal. Jun. 12, 2026) (collecting cases), or taken the position "that any post-deprivation process cannot cure the constitutional violation when the non-citizen was entitled to pre-deprivation notice and hearing." *Andriasyan v. Warden*, 2026 WL 1601905, at *9 (C.D. Cal. Jun. 1, 2026); *see, e.g.*, *Villegas Molina v. Mullin*, 2026 WL 1182194, at *3 (C.D. Cal. Apr. 23, 2026) (noting that the severe delay of post-deprivation bond hearings cannot undo the harms of immigration detention such as the loss of jobs and subpar

medical care); *Banol v. Warden*, 2026 WL 776793, at *5 (C.D. Cal. Mar. 19, 2026) ("The availability of a *Rodriguez* bond hearing six months after Petitioner was detained does not adequately address the risk that Petitioner was erroneously detained in the first place."). Other courts have found a post-deprivation hearing may satisfy due process. *See, e.g., Martin v. Mullin*, 2026 WL 2884985, at *5-6 (C.D. Cal. Sep. 24, 2026) (noting, inter alia, post-deprivation bond hearings afforded adequate procedural safeguards, making risk of erroneous deprivation low); *Aguilar v.* Semaia, 2026 WL 166906, at *5 (C.D. Cal. Jan. 16, 2026).

Here, petitioner argued in his March 2026 petition that he was entitled to a § 1226(a) hearing, and he subsequently stipulated to that relief. *See* case no. 5:26-cv-01339, docket nos. 1, 11. Petitioner then received a § 1226(a) hearing. The fact that petitioner is dissatisfied with the outcome of the bond hearing and the *Rodriguez* hearing does not change the fact that he received the relief he sought and stipulated to. Under the particular facts and circumstances of this case, including the low risk of erroneous deprivation following petitioner's arrest and eventual bond hearing, the court finds petitioner's § 1226(a) bond hearing adequately remedied the due process violation here.

**D. <u>Claim Three Is Not Cognizable</u>**

Finally, petitioner argues he is class member of *L.T.* and has been denied adequate medical care in violation of the *L.T.* preliminary injunction and the APA. Pet. at 20-21.

Claims that challenge the fact or duration of confinement and seek "either immediate release from that confinement or the shortening of its duration" are properly brought under § 2241. *Preiser*, 411 U.S. at 489 (1973); *see Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir. 2000) (per curiam) ("[P]etitions that challenge the manner, location, or condition of a sentence's execution must be brought pursuant to § 2241."). But claims concerning the general conditions of confinement are not cognizable under § 2241 and must be brought in a civil rights action. *Jingles v. Carr*, 2018 WL 11304199, at *1 (C.D. Cal. Jun. 12, 2018) (citing *Wright v. Shartle*, 699 F. App'x 733 (9th Cir. 2017). Here, petitioner's claim concerns the adequacy of medical care and is therefore

not cognizable on federal habeas review. *See, e.g., Alvarado Montes v. Larose*, 2026 WL 2668439, at *2 (S.D. Cal. Sept. 10, 2026) (petitioner may not challenge the conditions of his confinement, including inadequate medical care, in habeas corpus); *Pathak v. Chestnut*, 2026 WL 2267940, at *5 (E.D. Cal. Aug. 6, 2026) (because the inadequate medical care allegations may be addressed by measures short of release, petitioner is not entitled to habeas relief); *Mendoza v. Chestnut*, 2026 WL 1759575, at *2 (E.D. Cal. Jun. 18, 2026) (petitioner is not entitled to relief on her inadequate medical care claim because it is not cognizable).

**IV.**

**ORDER**

IT IS THEREFORE ORDERED that Judgment will be entered denying the Petition without prejudice.

DATED: October 22, 2026

SHERI PYM
United States Magistrate Judge